

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2296 | **DATE** | 10/28/2004 |
| **CASE TITLE** | Andre Wallace vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held on 10/26/04. For the reasons stated in the attached memorandum opinion, Defendants Kriston Kato and Eugene Roy's motion for leave to amend their answer to the amended complaint is granted. Furthermore, defendants Kriston Kato and Eugene Roy's second motion for summary judgment is granted in its entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Memorandum Opinion picked up by parties. | | OCT 29 2004 | |
| | Notified counsel by telephone. | | date docketed | 40 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| MW6 | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDRE WALLACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 2296 |
| ) | |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

DOCKETED
OCT 2 9 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants Kriston Kato's ("Kato") and Eugene Roy's ("Roy") second motion for summary judgment and motion for leave to amend their answer to the amended complaint. For the reasons stated below, we grant the motion for leave to amend the answer and grant the motion for summary judgment in its entirety.

## BACKGROUND

On January 19, 1994, Roy and Kato, detectives for the Chicago Police Department, were assigned to investigate the murder of John Herbert Handy ("Handy"). The police reports indicated that Handy had been shot in a building located at 825 N. Lawndale Avenue in Chicago, Illinois. The reports also indicated

1



that Handy was employed as a house sitter for a construction company which was rehabbing the building. In addition, the police reports indicated that Handy and the proprietor of the construction company had a confrontation with drug dealers near the building prior to the shooting. The killer apparently entered the building through a window in the back of the building, shot Handy with a 9mm weapon three times, and then fled down a gangway along the building.

After learning of the murder, two other officers familiar with the area interviewed witnesses at the scene and witnesses and other informants indicated that Laron Jackson ("Jackson") and Plaintiff Andre Wallace ("Wallace") were dealing drugs at the crime scene on the night of the murder. On January 19, 1996, the police picked up Wallace and Jackson and took them to the police station. Defendants assert that at that point Jackson and Wallace were not under arrest and that they did not ask to go home. Kato and Roy first began interrogating Wallace and Jackson around 9:30 p.m. During the night, Jackson eventually told police that Wallace had been working as "security" for the drug dealers on the night of the murder and was carrying a 9mm gun. Jackson also told police that he saw Wallace running down the gangway along the building after he heard shots fired. At 4:15 p.m. the police confronted Wallace with Jackson's statements. The police first discovered that Wallace was only fifteen years old and they called in a youth officer to assist them. At 6:00 a.m. an Assistant State's Attorney was brought in and Wallace signed a written statement waiving his *Miranda* rights and admitting that he shot Handy three

times.

At trial Wallace did not argue that he was innocent. Instead, at closing he argued that he killed Handy in self defense and at least during mutual combat arguing that he should be convicted of second degree murder rather than first degree murder. On appeal the appellate court ruled that Wallace had been seized for a significant amount of time prior to his written confession and the court remanded the case to the trial court to determine if the confession was legal. On remand the trial court found the confession to be admissible, but on the second appeal the appellate court ruled that the confession was inadmissible. Subsequently, the Assistant State's Attorney moved to *nolle prosequi* the charges against Wallace.

Wallace brought the instant action and filed a claim against Defendants pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging false imprisonment, excessive force, and unlawful arrest. Wallace also included a false imprisonment claim and a malicious prosecution claim based upon Illinois law.

On March 20, 2004, we granted Defendant Katos' and Roy's motion for summary judgment on all claims except, we denied without prejudice the motion for summary judgment on the denial of fair trial claim. We also denied without prejudice the City's motion to dismiss, which was based on the lack of liability on the part of the individual officers. On April 21, 2004, we granted Wallace leave to file an amended complaint. The amended complaint alleges that Wallace was denied a fair trial under the Fourteenth and Fourth Amendments because of Defendants'

3

conduct when Wallace was arrested, inculpatory statements by Wallace that were unlawfully obtained against him, and the introduction of evidence about his confession at his state trial. Kato and Roy have filed a second motion for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* At 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S.

574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Motion to Amend Answer

Defendants have moved to amend their answer to the amended complaint. Wallace objects to the filing of an amended answer and argues that Defendants waived the collateral estoppel defense by not including it in their answer to the amended complaint. Federal Rule of Civil Procedure 8(c) states, "In pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense." Wallace cites *Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 735 (7th Cir. 2004) in support of its waiver argument. In *Castro*, the district judge denied the defendant's motion for leave to amend its answer to include additional affirmative defenses, emphasizing the lengthy delay due to the defendant's "motion practice" and the defendant's lack of any reasonable excuse for its failure to raise its affirmative defense earlier. *Id.* Although there was


...

some dispute about which party caused the delay, the Seventh Circuit emphasized that "a district court is in a much better position than we to judge the course and progress of cases before it, and [the Seventh Circuit] will defer to the district judge's firsthand knowledge of the cause of delays unless its conclusion strikes [the Seventh Circuit] as completely unreasonable." *Id.*

Like the defendant in *Castro*, Defendants Kato and Roy have asked this court to amend their original answer to include the affirmative defense of collateral estoppel. However, Kato's and Roy's present request for leave to amend differs significantly from the request denied in *Castro*. In *Castro*, the suit was filed on October 21, 1999. *Id.* On April 17, 2000, the defendant filed its first answer containing three affirmative defenses, and in February of 2001, the defendant filed its summary judgment motion which was denied on June 21, 2001. *Id.* Six months later, on December 14, 2001, the defendant filed a motion to tack on additional defenses to its answer. *Id.* Central to the court's denial in *Castro* was the extraordinary delay between the defendant's answer and its request for leave to amend, which was approximately 18 months, and the defendant's lack of any reasonable excuse for why it waited so long to assert its additional defenses. *Id.* In contrast, in the instant action Defendants Kato and Roy filed their second motion for summary judgment less than 30 days after filing their answer to the amended complaint and have sought to amend the answer in a timely fashion.

In addition, Defendants were only put on notice that Wallace's pre-trial

criminal proceedings might be relevant by Wallace's amended complaint. It was only after receipt of certain pre-trial transcripts relating to the amended complaint that Defendants realized that there were potential collateral estoppel issues. The rationale behind Rule 8(c) is to "avoid surprise and undue prejudice to the plaintiff by providing her notice and the opportunity to demonstrate why the defense should not prevail." *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). As with all motions for leave to amend, the district court has the discretion to allow an answer to be amended to assert an affirmative defense not raised at the outset. *Id.*; Fed. R. Civ. P. 15(a). Although a defendant should not be permitted to "ambush a plaintiff with an unexpected defense," if the defendant acts in a timely fashion after the availability of the affirmative defense becomes reasonably apparent, a district court is well within its authority to grant leave to amend. *See Venters*, 123 F.3d at 968 (stating that "appellate courts are not inclined to find a technical failure to comply with Rule 8(c) fatal when the district court has chosen to recognize a belatedly affirmative defense, so long as the record confirms that the plaintiff had adequate notice of the defense and was not deprived of the opportunity to respond.").

Wallace's arguments that he will be prejudiced by allowing Defendants leave to amend their answer are unconvincing. Wallace refers vaguely to some "expense" incurred although this expense is not specified, and even if Wallace could show some minimal expense, it is doubtful that it would amount to the "undue prejudice" necessary for the court to go against its liberal allowance of leaves to amend under

7

15(a). *See* Fed. R. Civ. P. 15(a) ( stating that "leave shall be freely given when justice so requires"). Plaintiff also argues that leave to amend should be denied because such amendment would be futile. Although futility is a legitimate reason for the district court to deny leave to amend, *Park v. City of Chicago*, 297 F.3d 606, 612-13 (7th Cir. 2002), we do not find Defendants' defense futile and will examine the issue further in our discussion of the merits of their collateral estoppel claim. Finally, we will not penalize Defendants for their difficulties in addressing Wallace's inarticulate allegations in his complaint and amended complaint in this action. It was Wallace's lack of clarity in his first complaint that prevented the court from resolving all issues in the first dispositive motion and required the additional expense and time of the parties and the additional utilization of judicial resources to address the second motion for summary judgment. Therefore, we grant Defendants' motion to amend their answer to the amended complaint.

## II. Collateral Estoppel

Defendants argue that Wallace is barred from arguing that his confession was coerced under the doctrine of collateral estoppel. A federal court should generally "accord[] preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980)(stating that "res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of

the federal system."); 28 U.S.C. § 1738. *See also Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003)(stating that "[u]nder 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect that it would receive under state law.").

Under Illinois law for the doctrine of collateral estoppel a defendant must show that: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication. *Bajwa v. Metropolitan Life Ins. Co.*, 804 N.E.2d 519, 532 (Ill. 2004). Since the doctrine of collateral estoppel is an equitable doctrine, "collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Id.*

Illinois courts have found that a ruling on a defendant's motion to suppress in a criminal trial has a preclusive effect on a later case. *See e.g. People v. Owens*, 464 N.E.2d 252, 255 (Ill. 1984)(affirming lower court's ruling estopping inmate from arguing his confession should have been suppressed because the matter was decided in a motion to suppress hearing in the trial court);*People v. Miller*, 464 N.E.2d 1197, 1199 (Ill. App. Ct. 1984)(stating that "[i]t is well established in Illinois that a defendant may not repeatedly relitigate a pretrial motion to suppress" unless there is additional evidence or peculiar circumstances warranting reconsideration, but merely

discovering a new argument is not sufficient.).

Wallace argues that issues involved in the motion to suppress ruling ought to be relitigated because the case fits into the "peculiar circumstances" exception to collateral estoppel. *See People v. Hopkins*, 284 N.E.2d 283, 285 (Ill. 1972) (stating that peculiar circumstances which might limit how collateral estoppel can be used against a defendant in a criminal case might include the "variety of reasons [the criminal defendant] might not wish to appeal" or additional evidence.). Wallace has not given a sufficient reason for his failure to appeal the motion to suppress ruling. According to Wallace, if Defendants had raised the collateral estoppel defense in their original answer, Wallace would have had more time to gather evidence, he could provide the rationale for his criminal appellate attorney's choice not to raise the voluntariness of his confession on appeal. (Ans. 10). However, it was due to Wallace's inarticulate pleading and his vague references to his claims that reasonably prevented Defendants from raising the defense sooner. Absent the lack of clarity in Wallace's pleadings this issue would have been addressed long ago. Wallace has not shown the existence of any peculiar circumstances that fall within the collateral estoppel exception. *See People v. Mordican*, 356 N.E.2d 71, 73-74 (Ill. 1976) (stating that when the defendant was acquitted, he had no opportunity for appellate review of the trial court's denial of his motion to suppress evidence and that his case fit into the "peculiar circumstances" exception defined by *People v. Hopkins* and collateral estoppel could not be used against him).

*Hopkins* and *Mordican*, are both distinguishable from the instant case because they involve criminal prosecutions where the state was trying to prevent a criminal defendant from putting on an aspect of his defense by invoking collateral estoppel. 284 N.E.2d at 284; 356 N.E.2d at 72-73. The rationale underlying the "peculiar circumstances exception" adopted by the court in *Hopkins* is drawn from Justice Burger's dissent in *Ashe v. Swenson.* 397 U.S. 436 (1970). In his dissent, Justice Burger points out that the traditional policy rationales for applying collateral estoppel in civil cases, conservation of judicial resources and providing finality to plan for the future, are necessarily of less importance in a criminal trial. *Id.* at 464.

The Northern District of Illinois considered a case factually similar to the instant case in *Thomson v. Mueller*, 976 F.Supp. 762 (N.D. Ill. 1997). In *Thompson*, the defendant was arrested and charged with aggravated battery and resisting arrest. *Id.* At 763. As part of his defense, he filed a motion to quash the arrest claiming the officers lacked probable cause. *Id.* The judge concluded there was probable cause and the motion to quash the arrest was denied, but the defendant was acquitted on other grounds. *Id.* The defendant then filed an eight-count complaint in federal court against the arresting officers and the municipality alleging a false arrest, false imprisonment, malicious prosecution and excessive force brought pursuant to 42 U.S.C. § 1983 and § 1988, as well as state claims. *Id.* In the federal action the defendant sought summary judgment on the false arrest, false imprisonment and malicious prosecution claims, arguing that probable cause is an absolute bar to such

claims and since the state judge already concluded that probable cause existed the plaintiff was barred from presenting the claim under the doctrine of collateral estoppel. *Id.* at 464. The district court granted the motion for summary judgment finding that Thompson was collaterally estopped from challenging the state judge's determination. *Id.* At 765-66.

The court in *Thompson* indicated that peculiar circumstances exist "if there was no possibility of an appeal" or the "party against whom the prior decision is invoked did not have a full and fair opportunity to litigate. . . ." *Id.* at 765. In *Thompson* the court noted that the issue of probable cause was "thoroughly litigated", consisting of two days worth of testimony and multiple briefs, and was based on the judge's assessment of witness credibility (making the appeal unlikely). *Id.* At 766. Since the plaintiff already had a chance to thoroughly litigate his probable cause claim, and his appeal would have been highly unlikely to succeed had he been allowed to appeal the judge's finding, the court in *Thompson* held that it would not be unjust to find collateral estoppel barring the plaintiff from relitigating the issues from the probable cause hearing in his civil case. *Id.*; *James v. Conception*, 1998 WL 729757 *5 (N.D. 1998)(stating that the courts use case-by-case approach from *Thompson*, and finds that although civil plaintiff did not have the ability to appeal, the pretrial probable cause hearing in his criminal case was sufficiently thorough, and his appeal had a sufficiently low likelihood of succeeding, that collateral estoppel did apply).

Wallace asks this court to apply the "peculiar circumstances" exception to collateral estoppel to this case, and to allow Wallace to relitigate the substance of his motion to suppress in the instant civil case. However, the instant case is a civil action rather than a criminal action. In addition, Wallace already had a chance to thoroughly litigate the issues raised in his motion to suppress his confession, and unlike the plaintiff in *Thompson*, Wallace was given the opportunity to appeal his suppressed confession, but chose not to do so.

During Wallace's criminal trial, he filed a motion to suppress evidence which alleged that his confession was coerced, and was based on the same evidence of physical and mental abuse stated in Wallace's civil complaint presently before this court. (A Compl. Par. 5). Wallace admits, pursuant to Local Rule 56.1, that in his motion to suppress, Wallace alleged the same physical and psychological abuse Plaintiff alleges in his present amended complaint. ( R SF 47-53). Wallace's allegation that Defendants Roy and Kato's physical and psychological coercion led to his confession in violation of the Fifth Amendment was the center of his motion to suppress. Wallace was afforded an extensive hearing on his motion, spanning four days, involving testimony from Wallace himself and from nine witnesses and arguments from the parties. ( R SF 46-53). The trial court denied Wallace's motion to suppress his confession based on coercion. ( R SF 55). While true that the trial court judge did not articulate the rationale for his denial of Wallace's motion to suppress, it is clear that if the judge had found Wallace's evidence of abuse by Kato

13

and Roy to be credible, he would have granted the motion to suppress the confession. *See Williams v. Valtierra* 2001 WL 1263495, *2 (N.D. Ill. 2001)(stating that although the state court judge did not issue an opinion stating his reasons for denying the plaintiff's motion to suppress in the plaintiff's criminal trial, the judge could not have found that the plaintiff's confession was coerced *and* failed to suppress his confession, therefore the issue of coercion is precluded in the plaintiff's §1983 civil claim).

Finally, Wallace argues that although the state trial judge denied Wallace's motion to suppress, this denial was not "essential to the final judgment" as there was no "final judgment" in Wallace's case. However, the "final judgment" required in the third prong of the collateral estoppel test is only the final judgment as to the issue the moving party seeks to preclude, not to a final judgment in Wallace's criminal case as a whole. *See id.* (stating that the decision at issue in determining whether there was a "final judgment" is not the ultimate criminal conviction, rather it is the denial of plaintiff's motion to suppress in her criminal case). Roy and Kato have met their burden of showing that collateral estoppel should bar Plaintiff Wallace's Section 1983 claims based upon his coerced confession. Therefore, we grant the motion for summary judgment on the due process claim.

III. Waiver and Time-barred Claims

Defendants argue that Wallace has waived certain claims and that some

claims are time-barred. In regards to the first motion for summary judgment before this court, the court granted Roy's and Kato's summary judgment motion on Wallace's Fourth Amendment claims because they were time-barred by a two year statute of limitations applied to all §1983 claims filed in Illinois. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1036 (7th Cir. 2003); 735 ILCS § 5/13-202. Plaintiff argues that the applicable tolling of the statute of limitations was changed by two Seventh Circuit decisions, *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003) and *Wiley v. City of Chicago*, 361 F.3d 994 (7th Cir. 2004), which were decided after Wallace answered Defendants' first motion for summary judgment.

However, Defendants cited *Gauger* in their reply brief to the first motion for summary judgment prior to the court's decision on the first motion for summary judgment. This court fully considered the holding in *Gauger* in making its ruling on the first motion for summary judgment. (W SJ Reply 3). Wallace did not file a motion for reconsideration and by failing to question this court's ruling, even though Wallace has had months to do so, Wallace waived his right to reassert his Fourth Amendment claims in this Amended Complaint.

Also, even if this court did allow Wallace to replead his Fourth Amendment Claims under *Gauger* and *Wiley*, his claims would still be time barred. In *Gauger*, the Seventh Circuit set down the rule that when a constitutional claim under Section 1983 for false arrest would, if vindicated, undermine a state conviction, the statute of

limitations is not tolled until the charges against the defendant are dropped. 349 F.3d at 360-361. The rule is based on *Heck v. Humphrey* in which the Court held that before bringing a civil action connected to a criminal conviction, if the alleged unlawful actions in the civil action "would render [the] conviction or sentence invalid," a plaintiff needs to establish that the conviction has been reversed. 512 U.S. 477, 486-487 (1994).

The false arrest claim in this case is distinguishable from the false arrest claim in *Gauger*. In *Gauger* the plaintiff could not file his Section 1983 false arrest claim until the case against him was dismissed because the disposition of his civil suit would undermine his conviction. 349 F.3d at 354. However, in the instant action Wallace could have filed his false arrest claim after the Appellate Court issued its order on September 21, 1998. Wallace's Section 1983 claim would not have been barred by *Heck* after the Appellate Court's ruling because the Appellate Court remanded Wallace's case to determine whether his confession was sufficiently attenuated from Wallace's illegal arrest to be admissible. In other words, the court acknowledged the possibility that, even if Wallace was illegally arrested, his conviction could still stand. Therefore, after the Appellate Court ruling, Wallace's potential success on a false arrest claim would not imply the invalidity of his criminal conviction. *See Gauger*, 349 F.3d at 361(stating that "[w]hat we have rejected is a rule that false-arrest and other Fourth Amendment claims are *always* premature while the plaintiff still faces criminal punishment."). Since Wallace filed

his Fourth Amendment claim more than four years after it became actionable, it is still time-barred. Therefore, we grant Defendants' motion for summary judgment as to Wallace's Fourth Amendment Section 1983 claims.

IV. Cognizable Denial of Fair Trial Claim

Defendants argue that Wallace does not state a cognizable denial of a fair trial claim. For the reasons explained in *Gauger* Wallace lacks a cognizable denial of a fair trial claim. Wallace was present during the alleged misconduct by Defendants and thus there was no failure to disclose information to him resulting in an unfair trial. *Id.* at 360. Wallace argues that the holding in *Gauger* is limited to cases containing malicious prosecution claims. However, the court in *Gauger* provides no such limitation. The court explained its rationale in a general sense and did not specifically tie its analysis to a malicious prosecution claim. *Id.* Wallace has not provided any other valid arguments indicating that he has a valid denial of a fair trial claim.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for leave to amend their answer and grant their motion for summary judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 29, 2004